**HOGAN et al., Appellants,**

v.

**VILLAGE OF SOUTH LEBANON et al., Appellees.**

[Cite as *Hogan v. South Lebanon* (1991), 73 Ohio App.3d 230.]

Court of Appeals of Ohio,
Warren County.

No. CA 90–05–034.

Decided April 22, 1991.

*Christopher J. Cornyn,* for appellants.

*John C. Quinn,* for appellee Village of South Lebanon.

*Kaufman & Florence* and *Mark Florence,* for appellees James D. Smith, Edward Huddleson, Samuel Ferris, J.C. Napier, Elizabeth Prows and Stanley Rice.

*McIntosh, McIntosh & Knabe* and *Arthur T. Knabe,* for appellee Delbert Sandlin.

---

*Per Curiam.*

Plaintiffs-appellants, Vernon Hogan, Lelia Hogan, Emory Barker, James Mitchem and Darrell Alexander, appeal a decision of the Warren County Court of Common Pleas granting partial summary judgment in favor of defendants-appellees, village of South Lebanon, James D. Smith, Edward Huddleson, Samuel Ferris, J.C. Napier, Elizabeth Prows, Stanley Rice and Delbert Sandlin.

The village of South Lebanon ("the village") is a municipal corporation validly constituted under state law. Appellee James D. Smith is the elected mayor of the village and the remaining appellees are the elected members of the village council.

Appellants Vernon and Lelia Hogan owned and operated a trucking business in the village which involved the use of tractor-trailer or semitrailer trucks. Appellants Barker, Mitchem and Alexander, associates of the Hogans, also owned or operated tractor-trailer or semitrailer trucks in the village.

On February 10, 1988, the village council adopted Ordinance No. 88–12, which provides:

"SECTION 1: All tractors or tractor-trailers or semi-trailers as defined in Sec. 70.01, or any commercial vehicle having six or more wheels, except pickup trucks, shall be operated in the Village of South Lebanon only upon the designated truck routes, except for deliveries and pick-ups.

"SECTION 2. No owner or operator of a tractor, tractor-trailer, semi-trailer or any commercial vehicle with more than six wheels, except pickup trucks, shall park said vehicle within the limits of the Village of South Lebanon, except when making pick-ups or deliveries.

"SECTION 3. Whoever violates this ordinance shall be guilty of a minor misdemeanor and shall be fined not more than $100.00.

"SECTION 4. This ordinance being necessary for the preservation of the health and welfare of the inhabitants of the Village of South Lebanon, it is deemed to be an emergency and shall become effective immediately upon its passage."

Subsequently, appellants Mitchem, Alexander and Barker were cited for violating the ordinance. Each appeared in mayor's court before Mayor Smith, was found guilty and fined. Each paid the fine and court costs. Barker attempted to appeal the conviction to the Warren County Court, but the clerk of mayor's court did not certify the transcript of proceedings to the county court.

On February 10, 1989, appellants filed a complaint against appellees containing two claims for relief. In their first claim for relief, appellants alleged that the ordinance was unconstitutional. In their second claim for relief, appellants alleged that appellees, while acting under the color of state law, deprived them of their civil rights in violation of Section 1983, Title 42, U.S.Code. Specifically, appellants claimed that the ordinance was "intentionally designed and enacted to disrupt" appellants' business.

On October 11, 1989, appellees filed a motion for summary judgment on the second claim for relief, arguing that they were immune from suit under both state and federal law. In response, appellants filed several affidavits purporting to show that Mayor Smith and the village council enacted the ordinance specifically to retaliate against Hogan because of his political opposition to Mayor Smith and that the ordinance was enforced only as to Hogan and his associates. Appellees moved to strike the affidavits because they contained hearsay and therefore would not be admissible as evidence.

On April 4, 1990, the trial court issued a written decision concluding that appellees were immune from suit and that appellants failed to allege or prove by evidentiary materials the inadequacy of state remedies. An entry was subsequently filed granting summary judgment to appellees on appellants'

second claim for relief and indicating there was "no just reason for delay" pursuant to Civ.R. 54(B).  This appeal followed.

Appellants present two assignments of error for review.  In their first assignment of error, appellants state that the trial court erred in granting appellees' motion for summary judgment.  Appellants argue that the record does not show that appellees were entitled to absolute immunity as a matter of law.  Appellants claim that the record contains facts showing the ordinance was enacted and enforced "in the face of clear knowledge of its illegality and in the absence of jurisdiction as part of a conspiracy involving the mayor and village council members."  We find this assignment of error is not well taken.

■ As a preliminary matter, we would note that appellees argue that they are entitled to immunity pursuant to the Ohio Political Subdivision Tort Liability Act, R.C. 2744.01 *et seq.*  We find this argument to be erroneous for two reasons.  First, the act by its very terms does not apply.  R.C. 2744.09(E) provides that "[t]his Chapter does not apply to, and shall not be construed to apply to * * * [c]ivil claims based upon alleged violations of the constitution or statutes of the United States * * *[.]"  Therefore, this state sovereign immunity statute does not bar actions brought under federal civil rights laws.  *Wohl v. Cleveland Bd. of Edn.* (N.D.Ohio 1990), 741 F.Supp. 688, 690–691.  Second, the United States Supreme Court has held that "a state law that immunizes government conduct otherwise subject to suit under § 1983 is preempted, even where the federal civil rights litigation takes place in state court, because the application of the state immunity law would thwart the congressional remedy * * *."  *Felder v. Casey* (1988), 487 U.S. 131, 139, 108 S.Ct. 2302, 2307, 101 L.Ed.2d 123, 138; see, also, *Martinez v. California* (1980), 444 U.S. 277, 283–284, 100 S.Ct. 553, 558, 62 L.Ed.2d 481, 488.  Accordingly, we must look to federal law to determine the merits of this case.  *Martinez, supra,* at 283–284, 100 S.Ct. at 558, 62 L.Ed.2d at 488, fn. 8.

■ We will first discuss whether the village council members are entitled to immunity.  In *Tenney v. Brandhove* (1951), 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019, the United States Supreme Court held that state legislators are absolutely immune from suit under Section 1983, Title 42, U.S.Code for actions undertaken "in the sphere of legitimate legislative activity."  *Id.* at 376, 71 S.Ct. at 788, 95 L.Ed. at 1027.  "The claim of an unworthy purpose does not destroy the privilege," as it is "not consonant with our scheme of government for a court to inquire into the motives of legislators * * *."  *Id.* at 377, 71 S.Ct. at 788, 95 L.Ed. at 1027.

In *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency* (1979), 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401, the court extended absolute immunity to members of a state-created regional land planning agency "to the

extent the evidence discloses that these individuals were acting in a capacity comparable to that of members of a state legislature." *Id.* at 406, 99 S.Ct. at 1179, 59 L.Ed.2d at 413. *Lake Country Estates* expressly left open the question whether local legislators are entitled to absolute immunity under Section 1983 when they carry out legislative functions. *Id.* at 404, 99 S.Ct. at 1178–1179, 59 L.Ed.2d at 412, fn. 26.

Several circuit courts of appeal have taken *Lake Country Estates* one step further and held that local legislators are entitled to absolute immunity in Section 1983 suits for conduct undertaken in their legislative capacity. See, *e.g., Haskell v. Washington Twp.* (C.A. 6, 1988), 864 F.2d 1266, 1277; *Healy v. Town of Pembroke Park* (C.A. 11, 1987), 831 F.2d 989, 993; *Gorman Towers, Inc. v. Bogoslavsky* (C.A. 8, 1980), 626 F.2d 607, 611–614.

In *Haskell, supra,* a doctor sought to open an abortion clinic in Washington Township. At least one of the township trustees opposed abortion and tried various methods to stop the clinic from opening. Eventually, the township trustees passed a zoning resolution which placed abortion clinics in a different zoning classification, B–3. The only area in Washington Township zoned B–3 was fully occupied by a cement company. The doctor filed a Section 1983 suit in federal district court. The district court found the resolution to be unconstitutional, but determined that the trustees were entitled to qualified immunity. On appeal, the Sixth Circuit Court of Appeals reversed on the immunity issue, holding that local legislators are entitled to absolute immunity as long as they are acting in a legislative capacity. It stated: " * * * [T]he key inquiry is obviously in what capacity the individual Trustees were acting at the time of their alleged unconstitutional conduct. * * * [T]he scope of immunity depends on the nature of the activity involved." *Id.* at 1277–1278. Thus, if local legislators act in a judicial or legislative capacity, they are entitled to absolute immunity. If their conduct is administrative, they are entitled to qualified immunity. If their conduct is neither judicial, legislative nor administrative, they are not entitled to any immunity. The court went on to state:

"In this case, the Trustees contend that they were acting in their legislative capacity when enacting the zoning ordinances in question. Although zoning is ordinarily a legislative activity, it is not always legislative for purposes of immunity. *See Cutting v. Muzzey,* 724 F.2d 259 (1st Cir.1984) (Members of a municipal planning board were not entitled to absolute immunity when imposing conditions on a developer because of racial animus.). If the underlying purpose of zoning activity is to establish general policy, then it is legislative. *See Kuzinich [v. County of Santa Clara ],* 689 F.2d [1345] at 1349 [ (C.A. 9, 1982) ] ('the enactment of a general zoning ordinance is a legislative act.'). If,

however, 'the action "single[s] out specifiable individuals and affect[s] them differently from others," it is administrative.' *Cutting,* 724 F.2d at 261. *See Scott v. Greenville County,* 716 F.2d 1409, 1423 (4th Cir.1983) ('When local zoning officials do more than adopt prospective, legislative-type rules and take the next step into the area of enforcement, they can claim only the executive qualified immunity appropriate to that activity.'). Moreover, absolute immunity does not extend to even traditionally legislative actions of officials taken either in bad faith, because of corruption, or primarily in furtherance of *personal* instead of public interests. *Bruce* [*v. Riddle* (C.A. 4, 1980)], 631 F.2d 272, 276–277, fn. 2. * * *. Finally, while the interaction between local officials and their constituents or other interested parties may often be legislative, it is protected only if it is in furtherance of a reasonably ascertainable legislative activity. *Id.* at 279." (Emphasis *sic.*) *Id.* at 1278.

The court then remanded the case to the district court to characterize the trustees' conduct as "legislative, administrative or outside the scope of either." *Id.*

On remand, the federal district court concluded that the trustees were acting in a legislative capacity and were, therefore, entitled to absolute immunity. *Haskell v. Washington Twp.* (S.D.Ohio Sept. 22, 1989), case No. C–3–83–240, unreported. The court stated that some "zoning-related acts" are administrative because they "effectuate zoning policy through *ad hoc* decision making in particular situations; they do not involve the creation of zoning policy through the enactment of ordinances." (Emphasis omitted.) *Id.* at 7. On the other hand, the proposal and enactment of a zoning ordinance is "a quintessentially legislative act" even where the legislators' bad faith is acknowledged. *Id.* at 8. The court stated:

"The Court of Appeals * * * suggested that subtle distinctions can be involved in drawing the line, for immunity purposes, between local officials' 'administrative' and 'legislative' zoning related acts. 864 F.2d at 1278. Courts considering these issues have uniformly (and, perhaps, formalistically) held that the acts of formulating, proposing and voting for legislation are legislative acts to which absolute immunity from damages under § 1983 attaches. Plaintiffs have alleged little more than that [the] Defendants had unconstitutional motives for proposing and voting for the 1982 and 1986 ordinances. Their argument carried the day where the constitutionality of the ordinances was at issue * * * but inquiry into motives is precisely what *Tenney* and its progeny hold impermissible for reasons of public policy, where public officials are sued for damages as result of allegedly unconstitutional legislative acts." *Id.* at 9.

In the present case, the trial court found that *Haskell, supra,* "closely parallel[ed]" the facts before it and that the district court's decision was "well reasoned in both law and logic." We agree. The village council's proposal and enactment of the ordinance regulating trucking was a purely legislative act to which absolute immunity attached. Therefore, an inquiry into the council members' motives is not only irrelevant but inappropriate. "In times of political passion, dishonest or vindictive motives are readily attributed to legislative conduct and as readily believed. Courts are not the place for such controversies." *Tenney, supra,* 341 U.S. at 378, 71 S.Ct. at 789, 95 L.Ed. at 1027–1028.

We turn now to the issue of whether Mayor Smith was immune from liability when acting in his capacity as judge of mayor's court. It is well settled that judges are immune from liability for judicial acts committed within their jurisdiction, even if those acts are alleged to have been committed maliciously or corruptly. *Stump v. Sparkman* (1978), 435 U.S. 349, 355–356, 98 S.Ct. 1099, 1104, 55 L.Ed.2d 331, 338–339; *Pierson v. Ray* (1967), 386 U.S. 547, 553–554, 87 S.Ct. 1213, 1217–1218, 18 L.Ed.2d 288, 294–295.

"It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation." *Pierson, supra,* at 554, 87 S.Ct. at 1218, 18 L.Ed.2d at 294–295.

The doctrine of judicial immunity is applicable to suits brought under Section 1983 because the Congress gave no indication that it intended to abolish this long-established principle. *Id.* at 555, 87 S.Ct. at 1218, 18 L.Ed.2d at 295. In *Stump, supra,* the United States Supreme Court held that judges are immune from liability under Section 1983 unless they act in the "clear absence of jurisdiction." *Id.,* 435 U.S. at 356–357, 98 S.Ct. at 1105, 55 L.Ed.2d at 339. The court stated that "the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Id.* at 356, 98 S.Ct. at 1105, 55 L.Ed.2d at 339.

R.C. 1905.01(A) provides that "[i]n all municipal corporations not being the site of a municipal court * * * the mayor of the municipal corporation has jurisdiction to hear and determine any prosecution for the violation of an ordinance of the municipal corporation * * *[.]" Accordingly, Smith was acting within his jurisdiction and was, therefore, immune from liability.

Additionally, appellants' claim that Mayor Smith was not performing a "judicial act" when he convicted them of violating the ordinance is without

merit. Appellants argue that Smith conspired with the village council to pass the ordinance and deprive appellants of their constitutional rights. We find no merit in this argument. First, appellants presented no affidavits containing admissible evidence substantiating these claims. See Civ.R. 56(E). Second, in *Stump, supra*, the court stated that " * * * the factors determining whether an act is a judicial one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Id.*, 435 U.S. at 362, 98 S.Ct. at 1107, 55 L.Ed.2d at 342. As indicated by R.C. 1905.01(A), ruling on violations of municipal ordinances is a function normally performed by the judge of a mayor's court and we cannot conclude that Smith did not act in a judicial capacity regardless of his motive.

In sum, we find no issue of material fact. Construing the evidence most strongly in appellants' favor, we find that reasonable minds could come to but one conclusion: that appellees are immune from liability. They are, therefore, entitled to judgment as a matter of law on appellants' second claim for relief. Accordingly, the trial court did not err in granting summary judgment in appellees' favor. See *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47. Appellants' first assignment of error is overruled.

In their second assignment of error, appellants state that the trial court erred in concluding that parts of the affidavits they submitted were inadmissible. Appellants argue that the affidavits did not contain hearsay and were "highly relevant" to demonstrate the alleged conspiracy. We find this assignment of error is not well taken.

Civ.R. 56(E) provides, in pertinent part:

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

The admission or exclusion of relevant evidence rests within the discretion of the trial court. *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 163, 17 O.O.3d 98, 100, 407 N.E.2d 490, 493–494.

In his written decision, the trial judge set forth ten findings of fact. He then stated that he could not consider any other material contained in the affidavits because they did not "set forth facts as would be admissible in evidence" and they did not "show affirmatively that the affiant [was] competent to testify to the matters stated therein." After a review of the subject affidavits, we cannot say that this decision was so arbitrary, unreasonable or

unconscionable as to connote an abuse of discretion.  See *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142.  Accordingly, appellants' second assignment of error is overruled.

*Judgment affirmed.*

KOEHLER, P.J., WILLIAM W. YOUNG and WALSH, JJ., concur.